UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.

JOADYS OLIVERA, on behalf of herself and
all others similarly situated,

    Plaintiff,

vs.

LUX COSMETIC SURGERY CENTER CORP., a Florida Profit Corporation; SEDUCTION COSMETIC CENTER CORP., a Florida Profit Corporation; NEW YOU PLASTIC SURGERY & SPA CORP., a Florida Profit Corporation; CG BEAUTY PLASTIC SURGERY CORP., a Florida Profit Corporation; JARDON'S MEDICAL FOR PLASTIC & BARIATRIC SURGERY CORP., a Florida Profit Corporation; BUTTERFLY COSMETIC CENTER CORP., a Florida Profit Corporation; LUIS R. JARDON, individually and GRETEL JARDON, individually,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Joadys Olivera ("Olivera" or "Plaintiff") on her own behalf and on behalf of all those similarly situated, sues Defendants, LUX COSMETIC SURGERY CENTER CORP. ("Lux"), SEDUCTION COSMETIC CENTER CORP. ("Seduction"), a Florida Profit Corporation; NEW YOU PLASTIC SURGERY & SPA CORP. ("New You"), a Florida Profit Corporation; CG BEAUTY PLASTIC SURGERY CORP. ("CG Beauty"), a Florida Profit Corporation; JARDON'S MEDICAL FOR PLASTIC & BARIATRIC SURGERY CORP. ("Jardon's"), a Florida Profit Corporation; BUTTERFLY COSMETIC CENTER CORP. ("Butterfly"), a Florida Profit Corporation, (collectively, the "Corporate Defendants"), LUIS R. JARDON, individually ("Mr. Jardon") and GRETEL JARDON ("Ms. Jardon"),

individually, (the Corporate Defendants, Mr. Jardon and Ms. Jardon are collectively the "Defendants"), and states:

## GENERAL ALLEGATIONS

1. This is an action for declaratory judgment, to recover monetary damages in the form of unpaid overtime compensation, as well as an additional amount as liquidated damages, to redress the deprivation of rights secured to Plaintiff and other employees similarly situated by the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA") and for an award of attorneys' and paralegal fees and costs. This action also includes a claim in Count III under Florida law for unpaid wages and attorneys' fees under Fla.Stat. Section 448.08.

## JURISDICTION

2. This Court has subject jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), under the FLSA as to Counts I and II. This Court has supplemental subject jurisdiction over the state law claim brought in Count III under 28 USC § 1367.

3. At all times material, Plaintiff was a non-exempt employee.

4. At all times material, Corporate Defendants were the joint employers of the Plaintiff.

5. At all times material, Corporate Defendants were in a joint enterprise in the ownership and operation of a number of cosmetic and plastic surgery centers and related businesses located in South Florida.

6. At all times material, Corporate Defendants operated as a business organization which sells and/or markets its services and/or goods to customers from throughout the United States and elsewhere and also provides its services for goods sold and transported from across state lines of other states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accepts funds from non-Florida sources, uses electronic, digital and telephonic transmissions going over state lines to do its business, transmits funds outside the State of

Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. As such, Defendants owned and operated a business engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s).

7. Upon information and belief, at all times material hereto, Corporate Defendant's annual gross revenue exceeded $500,000 per annum separately, or combined as a joint enterprise with the other Corporate Defendants named herein, or which are as of yet unknown but will be revealed through further discovery. To the extent that Corporate Defendants operated as part of a joint enterprise, it did so with corporate entities that performed related activities, under the common control of the individual Defendants, and for common business purposes related to the work performed by Plaintiff for Defendants.

8. The Defendants are subject to the personal jurisdiction of this Court because they operate, conduct, engage in, and/or carry on business in the Southern District of Florida.

9. The Defendants are also subject to the personal jurisdiction of this Court because they engage in substantial and not isolated activity within the Southern District of Florida.

## VENUE

10. This Court is the appropriate venue based upon the following:

   (a) The unlawful employment practices alleged herein occurred and/or were committed in the Southern District of Florida and,

   (b) Defendants were and continue to be companies and employers with individuals doing business within the Southern District of Florida.

## PARTIES

11. Plaintiff was and continues to be a resident of Miami-Dade County, Florida.

12. Defendants misclassified Plaintiff as an "independent contractor," as it improperly did many, if not most all, of the people working for them.

13. Despite how she was misclassified, Plaintiff was, in fact, a non-exempt "employee" of the Defendants within the meaning of the FLSA.

14. Defendant, Seduction, was the putative direct employer of Plaintiff and one of her employers within the meaning of the FLSA. In or around August, 2018, Defendant, Seduction, became the putative direct employer of Plaintiff,

15. The other employers were the remaining Defendants.

16. Plaintiff worked full time for Defendants, and only the Defendants, with the title (but not the actual duties) of "Administrator" from approximately March 23, 2017 through September 5, 2018, when she summarily terminated without.

17. Defendants did not keep time records of the time worked by Plaintiff or most of the other people working for them.

18. Defendants did not pay Plaintiff overtime even though she was non-exempt and worked more than 40 hours per week in most, if not all, of the weeks she worked for Defendants.

19. Corporate Defendants, Lux, Seduction, New You, CG Beauty, the Jardons, and Butterfly, are a joint or common enterprise as defined in 29 U.S.C. § 203 (r)(1), and they are also joint employers as defined in 29 C.F.R. §791.2.

20. All Corporate Defendants have:

    A. related activities, share just about everything (including, but not limited to, ownership, officers, directors, founders, employees, management, staff, physicians, nurses, health care workers, marketing, technology, purchasing, contracting, professional services, accounting, tax preparation, facilities, vendors, referral networks,

      B. unified operation and common control of the day-to-day operations;

      C. a common business purpose, the profitable operation of their cosmetic and surgical business empire; and

      D. with that purpose, provided the necessary supplies, equipment and staffing for the operation of each other.

21. The Defendants were joint employers because, as to each other, among other things:

    A. They had absolute control of the workers;
    B. They had extensive supervision, direct or indirect, of the work being performed;
    C. They had the power to determine the pay rates or the methods of payment of the workers;
    D. They had the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
    E. Preparation of payroll and the payment of wages was done centrally, albeit sometimes under the guise of being done separately;
    F. There existed common ownership of the facilities where work occurred;
    G. Services performed by Plaintiff and that of the staff and physicians at the various facilities owned and operated by the Defendants were an integral part of the specialty cosmetic surgery business operation of the Defendants; and,
    H. They all had relative investments in the enterprise. The Defendants provided financial assistance to each other, they provided the equipment, staff and facilities to run business at their locations. They depended on each other for the provision of supplies, materials, administration, staffing, physicians, etc. to perform their functions. They were economically dependent on each other.

22. At all times material, Mr. Jardon and Mrs. Jardon were owners, directors, officers of the Corporate Defendants, and exercised total, complete and absolute operational day to day and overall control of the business such that they were each an employer of Plaintiff within the meaning of Section 3(d) of the "Fair Labor Standards Act" [29 U.S.C. § 203(d)], in that they acted directly in the interests of the Corporate Defendant employers in relation to their employees, including Plaintiff.

23. Defendants knowingly and willfully failed to pay Plaintiff and other employees similarly situated their lawfully earned wages and overtime compensation in conformance with the FLSA.

24. The Plaintiff and others similarly situated to her were workers who worked at the cosmetic surgery centers owned and operated by the Defendants, misclassified as "independent contractors," non-exempt employees, and were not paid overtime for hours they worked over 40 hours in one or more weeks over the past three years or longer.

25. Plaintiff typically worked six days per week.

26. Plaintiff typically worked from as early as 8:45/9:00 AM to as late as 7:30 PM or later (sometimes until 11:00 PM) Mondays through Fridays and from 9:00AM to 3:30/4:00PM or later on Saturdays (every Saturday until around September, 2017, and then every other Saturday), as follows:

|  | Typical office/work schedule | Hours |
|---|---|---|
| Monday | 8:45-9:00 A.M. - 7:30 P.M. | 10.5 |
| Tuesday | 8:45-9:00 A.M. - 7:30 P.M. | 10.5 |
| Wednesday | 8:45-9:00 A.M. - 7:30 P.M. | 10.5 |
| Thursday | 8:45-9:00 A.M. - 7:30 P.M. | 10.5 |
| Friday | 8:45-9:00 A.M. - 7:30 P.M. | 10.5 |
| Saturday | 9:00 A.M. – 4:30 P.M. | 7.00 |
|  | Total: | 59.5 |

27. Typically, Plaintiff did not have a bona fide meal period during which Defendants would have been permitted to "take her off the clock."

28. In addition to those typical hours, Plaintiff worked additional time when away from the office, before arriving at the office, after leaving the office at night and on the weekend, including, but not limited to, when she was using the phone, texting and/or emailing because she was constantly contacted by, and had to respond to Mr. Jardon and Mrs. Jardon and others concerning work-related demands or otherwise. Such time averaged about 3.5 hours per week.

29. All in all, Plaintiff averaged about 23 hours per week for about 77 weeks or about 1,771 hours of overtime.

30. Plaintiff's weekly base pay was typically $1,000. Plaintiff received $400 per month as a "car allowance." Plaintiff received a bonus about half the time of $2,000 per month.

31. All in all, Plaintiff's average weekly pay was about $1,400.

32. Plaintiff's weekly pay of $1,400 divided by 63 hours yields an hourly rate of $22.22.[1]

33. Therefore, Plaintiff's overtime hourly rate was about $33.33.

34. Overtime should have been paid for an average of 23 overtime hours per week at $33.33 hour or $766.59/week for the 77 weeks worked (from March 23, 2017 to September 5, 2018) or $59,027 in compensatory damages and an additional statutory amount of $59,027 in liquidated damages for a total of $118,054[2]

35. The preceding paragraphs 25-34 set forth:

**A.** **An initial estimate of the total amount of alleged unpaid wages;**

**B.** **A preliminary calculation of such wages;**

**C.** **The approximate period during which the alleged FLSA violations occurred; and**

**D.** **The nature of the wages (e.g., overtime or straight time):**

36. Defendants, exercising reasonable diligence, would have gained knowledge that Plaintiff and their employees were not being compensated at the rate of one and a half times the regular rate for those hours that were worked in excess of forty (40) per week, as required by the FLSA. Defendants knew the amount of time Plaintiff spent performing work or, with

---

[1] That amount and the overtime rate may be higher if additional commissions or bonuses were also paid to Plaintiff and are added.

[2] That amount applies just for the Plaintiff; it is believed that she is not the only current and former employee entitled to overtime for work performed over the last three years (who, ultimately, should be notified by court order and given a chance to join this collective action. Note also it is believed that the Defendants failed to post the notice required by the FLSA dond, therefore, there should be an equitable tolling of the Statute of Limitations all others similarly situated.

the exercise of reasonable care, could have and should have known of the existence of all of the time worked by Plaintiff.

## STATEMENT OF FACTS

37. Plaintiff worked for the Defendants from March 23, 2017 to September 5, 2018.

38. Plaintiff performed various nonexempt work for Defendants, working with the title, but without the actual duties and authority, of "Administrator."

39. Plaintiff was paid a flat amount each week.

40. Defendants knowingly and willfully operated their business with a policy of not paying overtime compensation to Plaintiff, which was in violation of the FLSA.

41. Defendants knowingly misclassified workers throughout the various companies as "independent contractors," in part, so that the Defendants could improperly attempt to avoid paying overtime to non-exempt workers who were actually employees entitled to be paid overtime.

42. Defendants have been sued previously for overtime violations and, therefore, knew or should have known they were in violation of the FLSA, sufficiently so as to warrant the extension of the applicable statute of limitations from two to three years.

43. Furthermore, the poster employers are required to post to inform employees of their rights under the FLSA was not posted and/or kept current and, therefore the applicable statute of limitation should be equitably tolled. See, e.g.,Cruz v. Maypa, 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("Failure to provide required notice of the governing legal requirements may be a sufficient basis for tolling."); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

44. At various times within the last six (6) months, Plaintiff worked for Defendants in excess of forty (40) hours within a work week and was not compensated at the rate of one and a half times her respective regular rate for those hours that Plaintiff worked in excess of forty (40) per week, as required by the FLSA.

45. Defendants have violated Title 29 U.S.C. §206 and/or §207 in that, among other reasons:

    (a) Plaintiff was not paid overtime to which she was entitled; and

    (b) Defendants have failed to maintain proper time records as mandated by the FLSA.

46. Other employees similarly situated to Plaintiff were not paid overtime they had earned.

47. Plaintiff has retained Schwarzberg & Associates, P.L. to represent her (and those who join in this collective action) and has agreed to pay the Firm reasonable attorneys' and paralegal fees for its services.

48. Plaintiff has fulfilled all conditions precedent to the filing of this lawsuit and/or such conditions have been waived.

## COUNT I
## UNPAID OVERTIME COMPENSATION – DECLARATION—
## VIOLATION of 29 U.S.C. § 207

49. Plaintiff realleges and reavers the General Allegations as if fully set forth herein.

50. During Plaintiff's employment with the Defendants, she worked hours in excess of forty (40) per week for which she was not compensated at the statutory rate of time and one-half.

51. Plaintiff was entitled to be paid at the rate of time and one-half for hours worked in excess of the maximum hours provided for in the FLSA.

52. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

53. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to her are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case to determine the amount due to her. Some of Plaintiff's compensation was given to her in cash for about a month and, therefore, there may be no record of such payments. In another instance, Defendants failed to pay Plaintiff ANYTHING for the 10 days or so around the Christmas-New Year period.

54. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff at the statutory rate of time and one-half for the hours worked in excess of forty (40) hours per week when they knew or should have known such was due.

55. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

56. Plaintiff has suffered damages in the amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

57. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Joadys Olivera, respectfully requests that judgment be entered in her favor and for all others similarly situated who join in the action against the Defendants jointly and severally:

   a. Declaring that Defendants have violated the overtime provisions of 29 U.S.C. § 207;

   b. As to Plaintiff and others similarly situated:

      i. Awarding overtime compensation in the amounts to be calculated;

      ii. Awarding liquidated damages in the amounts calculated;

      iii. Declaring that the statute of limitations should be extended to three years and/or that the statute of limitation be tolled;

      iv. Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

      v. Awarding post-judgment interest; and

c. Ordering any other and further relief this Court deems to be just and proper.

## COUNT II
## FLSA RETALIATION

58. Plaintiff realleges and reavers the General Allegations as if fully set forth herein.

59. Defendants fired Plaintiff summarily on September 5, 2018 because of her overtime claim in violation of the anti-retaliation provisions of the FLSA.

60. When Defendants fired Plaintiff summarily on September 5, 2018, Defendants told Plaintiff that they "knew" she would be filing a lawsuit against them to recover overtime due her.

61. When Defendants fired Plaintiff summarily on September 5, 2018, Defendants offered Plaintiff a check in hand for $5,000 in exchange on the spot for a release which Defendants said was prepared by their attorney in advance of her firing.

62. Defendants' actions constituted unlawful retaliation.

63. Plaintiff engaged in protected activity, Plaintiff suffered adverse employment actions, and the adverse actions, including, but not limited to, her firing was because of Plaintiff's overtime claim, by Defendants' own admissions and conduct.

64. Plaintiff has suffered damages as a direct and proximate result in the amount not presently ascertainable. Those damages include, but are not necessarily limited to the period in which Plaintiff is between jobs, the difference in compensation for a reasonable period of time and other damages to be determined.

65. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Joadys Olivera, respectfully requests that judgment be entered in her favor against the Defendants jointly and severally for all damages and all other relief available under the FLSA, including, but not limited to, attorneys' fees and costs and any other and further relief this Court deems to be just and proper.

## COUNT III
## WAGES AND ATTORNEYS' FEES UNDER FLA. STAT. SECTION 448.08.

66. Plaintiff realleges and incorporates the General Allegations, as if fully set forth herein.

67. Defendants owe Plaintiff her wages for work performed.

68. Defendants knowingly and willfully failed to pay Plaintiff her wages.

69. Plaintiff is also entitled to be paid her accrued, but unpaid, PTO, including, but not limited to, unused vacation.

70. As a direct and proximate result of Defendants' failure to pay Plaintiff her wages for which she is owed, Plaintiff has been damaged.

71. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Fla. Stat. Section 448.08 on her claim for unpaid wages. PTO, including, but not limited to, vacation pay, is considered wages under Florida law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants jointly and severally:

    a.    Awarding her unpaid wages;

    b.    Awarding her reasonable attorney's fees and costs and expenses of this litigation pursuant to Fla. Stat. Section 448.08. *et. seq.*;

    c.    Awarding her pre- and post-judgment interest; and

    d. Ordering any other and further relief this Court deems to be just and proper.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE FOR HERSELF AND ALL OTHERS SIMILARLY SITUATED.**

           SCHWARZBERG & ASSOCIATES
           *Attorneys for Plaintiff*
           2751 South Dixie Highway, Suite 400
           West Palm Beach, FL 33405
           Telephone: (561) 659-3300
           Facsimile: (561) 693-4540

           By: /s/ ***Steven L. Schwarzberg***
           STEVEN L. SCHWARZBERG
           Florida Bar No. 306134
           steve@schwarzberglaw.com
           mail@schwarzberglaw.com